

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

March 28, 2024

Lisa H. Bebchick
T +1 212 596 9740
lisa.bebchick@ropesgray.com

**VIA ECF AND EMAIL**

The Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re: *Jane Doe v. Sachin Shridharani, et al.*, No. 1:24-cv-00966 (S.D.N.Y.)

Dear Judge Carter:

We represent Advarra, Inc., a defendant in the above-captioned action. We write to set forth the multiple pleading deficiencies in the Complaint (Dkt. 1) that require the complete dismissal of Plaintiff's claims against Advarra. Pursuant to Your Honor's Individual Practices, we respectfully request a pre-motion conference regarding Advarra's anticipated motion to dismiss.

Plaintiff alleges that she consented to participate in a study called "Prospective Study on Fat Retention when using the AuraGen 1-2-3TM with AuraClensTM System in Processing of Lipoaspirate for Autologous Fat Grafting to the Breast." Compl. ¶ 20. Sientra, Inc. sponsored the study, Sachin Shridharani, M.D. served as the study's principal investigator, and Luxurgery, LLC served as the location, or site, of the study. *Id.* ¶ 22. Sientra engaged Advarra to serve as the institutional review board ("IRB") for the study. *Id.* ¶ 166.

Pursuant to U.S. Food and Drug Administration ("FDA") regulations, an IRB is an administrative review body "formally designated by an institution to review, to approve the initiation of, and to conduct periodic review of, biomedical research involving human subjects." 21 C.F.R. § 56.102(g). "'[T]he purpose of IRB review is to assure . . . that appropriate steps are taken [by those undertaking the study, *i.e.*, the principal investigator and sponsor] to protect the rights and welfare of humans participating as subjects in the research.'" Compl. ¶ 167 (quoting *Institutional Review Boards Frequently Asked Questions* ("FDA IRB FAQs") at I(1) (Jan. 1998)).[1] In order to accomplish this purpose, IRBs "review research protocols and related materials (*e.g.*, informed consent documents and investigator brochures)." FDA IRB FAQs at I(1). An IRB "exists to carry out certain functions prescribed by the federal government to further the advancement of medical science." *Konrady v. Oesterling*, 149 F.R.D. 592, 596 (D. Minn. 1993) (emphasizing the "specificity" of the function of an IRB and "its lack of impact on the overall control of patient care"). The IRB's role is "more like a regulatory body, than a treating medical professional or designer of the clinical trial

---

[1] *Available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/institutional-review-boards-frequently-asked-questions (last accessed Mar. 28, 2024).

protocol" and thus it "stand[s] outside any treatment relationship with" a study participant. *Zeman v. Williams*, 2014 WL 3058298, at *5 (D. Mass. July 7, 2014). A study's sponsor (here, Sientra) is ultimately responsible for "ensuring proper monitoring" of the study and "securing an agreement from the investigator" (here, Dr. Shridharani) "that includes a 'statement of the investigator's commitment to . . . [e]nsure that the requirements for obtaining informed consent are met.'" Compl. ¶¶ 148-49 (citing 21 C.F.R. §§ 812.40, 812.43).

The Complaint alleges that Dr. Shridharani and Luxurgery videorecorded Plaintiff's surgery and posted the recording on Luxurgery's social media without her consent. *Id.* ¶¶ 2-3. Plaintiff alleges that after she complained to Dr. Shridharani and Luxurgery, the recording was removed but she later discovered Luxurgery had posted it again to its social media. *Id.* ¶ 4. After the second posting, Plaintiff alleges that she notified Advarra that the postings were a "violation" of the informed consent form she signed in order to participate in the study. *Id.* ¶¶ 175-77. As the Complaint acknowledges, after being apprised of Plaintiff's concerns, Advarra exercised its review role and determined that Luxurgery would need to "revise" the informed consent form and "change their processes in regard to collecting photographs, videos, and/or audio recordings of patients." *Id.* ¶ 179. Plaintiff alleges that after she notified Advarra, Dr. Shridharani and Luxurgery posted a video of her surgery a third time. *Id.* ¶ 6. Plaintiff claims that Advarra was "negligent in its failure" to prevent the posting by Dr. Shridharani and Luxurgery and "to ensure that any videos or pictures were segregated and held in confidence in accordance with the terms of" the informed consent form. *Id.* ¶ 182.

The Complaint purports to assert nine causes of action, only three of which are asserted against Advarra and which are as follows: (i) negligent supervision and/or direction (Count VII), (ii) intentional infliction of emotional distress ("IIED") (Count VIII), and (iii) negligent infliction of emotional distress ("NIED") (Count IX). The Complaint fails to state a claim for numerous reasons.

As a threshold matter, Plaintiff's negligent supervision claim against Advarra fails because Plaintiff has not identified any legal duty that Advarra, as an IRB, owes to Plaintiff as a participant in the study. *See Doe v. Turnmill LLC*, 57 Misc. 3d 620, 624-25 (Sup. Ct. N.Y. Co. 2017) ("The question of whether someone owes a duty of care to reasonably avoid injury to another is a question of law for the court."). The Complaint is devoid of any allegation as to this critical element of Plaintiff's claim, and at least one federal court has recognized that an IRB "do[es] not stand in such a relationship to a subject in a clinical trial . . . as to give rise to a duty of care with respect to the obtaining of informed consent." *Zeman*, 2014 WL 3058298, at *5 (dismissing negligence claim against IRB members). To the extent that Plaintiff purports to premise her negligent supervision claim on any alleged failure by Advarra to comply with FDA regulations, courts have consistently held that no federal statute or regulation creates a private right of action against IRBs or a duty to study subjects. *See, e.g.*, *Keller v. Strauss*, 2011 WL 2470631, at *6 (N.D. Ga. June 17, 2011) *aff'd*, 480 F. App'x 552 (11th Cir. 2012) ("neither the [Food, Drug, and Cosmetic Act ('FDCA')] or its

regulations support a private right of action" against IRBs).[2]

Plaintiff's negligent supervision claim fails for the additional, independent reason that the Complaint contains no allegation that Advarra was in an employee-employer relationship with either alleged tortfeasor (*i.e.*, Dr. Shridharani or Luxurgery). *See Dava v. City of New York*, 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016) (Carter, J.) (negligent supervision claims under New York law require "that the tort-feasor and the defendant were in an employee-employer relationship"); *Naughright v. Robbins*, 2014 WL 5315007, at *8 (S.D.N.Y. Oct. 17, 2014) (dismissing negligent supervision claim where plaintiff had not pleaded that defendant was the tortfeasor's employer).

Moreover, not only does the Complaint fail to plead facts that demonstrate Advarra had any duty to supervise, but it also does not allege how Advarra purportedly acted in a negligent fashion. While Plaintiff claims that Advarra generally failed "to cause Dr. Shridharani and Luxurgery to take steps to prevent the posting of the video of Plaintiff's surgery without her consent or to ensure that any videos or pictures were segregated and held in confidence" (Compl. ¶ 182), the Complaint does not identify any specific action Advarra was required but failed to take. Indeed, compelling an IRB to engage in some sort of amorphous and all-encompassing supervision of the investigator and site's activities—including monitoring of activities beyond those related to a study, such as marketing and data management practices—is inconsistent with an IRB's role and untethered from the applicable regulations that place the responsibility to monitor the conduct of study sites and investigators *on the sponsor*, not the IRB. *See* 21 CFR §§ 812.2(b)(1)(iv), 812.25(e), 812.43(d), 812.46, 56.101, 56.108-09; *see also Konrady*, 149 F.R.D. at 596.

The Complaint's IIED and NIED claims similarly require dismissal. The IIED claim is alleged without specificity as to Advarra's specific conduct (*see* Compl. ¶¶ 187-94), and the only conduct in the Complaint as to Advarra is its alleged negligent supervision of Dr. Shridharani and Luxurgery, which fails to state a claim for the reasons set forth above. The NIED claim similarly relies upon the Complaint's mistaken assumption that Advarra owes Plaintiff a "duty of care . . . as the IRB" (Compl. ¶ 200), which it does not for the reasons set forth above.

The IIED and NIED claims fail for the following additional, independent reasons: *First*, in support of her IIED claim, Plaintiff alleges nothing to show that Advarra engaged in conduct with "intent to cause, or disregard of a substantial probability of causing, severe emotional distress." *Dava*, 2016 WL 4532203, at *11 (internal quotation marks and citation omitted). On the contrary, Plaintiff alleges that Advarra reviewed the informed consent and, after being apprised of Plaintiff's concerns, took action to review the form and advise that Luxurgery would need to change the form and its processes—changes Plaintiff alleges that Luxurgery and Dr. Shridharani ultimately failed to follow. *See* Compl. ¶¶ 59, 61. *Second*, an IIED claim under New York law requires a plaintiff to plead facts demonstrating "extreme or outrageous conduct" (not present here) and "remains a highly disfavored

---

[2] *See also Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) (concluding, based on the FDCA's legislative history, that Congress "did not intend, either expressly or by implication, to create a private cause of action under the FDCA"); *see also id.* at 697 (collecting cases concluding same, including *Am. Home Products Corp. v. Johnson and Johnson*, 436 F. Supp. 785 (S.D.N.Y. 1977), *aff'd*, 577 F.2d 160 (2d Cir. 1978)).

tort under New York law" that should be invoked "only as a last resort." *Dava*, 2016 WL 4532203, at *11 (internal quotation marks and citation omitted); *see also Stern v. Burkle*, 867 N.Y.S.2d 20, 20 (Sup. Ct. N.Y. Co. June 16, 2008) (dismissing IIED claim and noting that "[e]stablishing the requisite outrageousness [required for an IIED claim is] difficult. For example, outrageousness was not established where the defendant, plaintiff's supervisor, was alleged to have maliciously displayed, to coworkers, nude photos taken of plaintiff in connection with his work as a model") (citation omitted). Nothing in the Complaint comes close to alleging that Advarra acted maliciously. *Third*, Plaintiff's NIED claim fails because it requires a showing of either "physical injury or the threat of danger, either to the plaintiff herself or to a close family member," neither of which are alleged in the Complaint. *Dava*, 2016 WL 4532203, at *11 (citations omitted).

For the reasons set forth above, Advarra respectfully requests a pre-motion conference in connection with its anticipated motion to dismiss. We appreciate Your Honor's attention to this matter.

                      Respectfully submitted,

                      */s/ Lisa H. Bebchick*
                      Lisa H. Bebchick